SUMMERS, Justice.
This case presents two issues arising out of appellant Richard Johnson’s trial and conviction for the armed robbery of a *252 Time Saver Food Store in the City of New Orleans.
According to the evidence at the trial, between 7:30 and 8:00 o’clock on the evening of February 11, 1974 three men entered the Time Saver Food Store at 4827 Downman Road in the City of New Orleans. One of the men was armed with a gun. After a brief verbal exchange, the employees of the store, Gloria Sanders and Barbara Davis, were robbed of some of the contents of their purses and money was taken from the cash register.
Police were called and they ascertained from Gloria Sanders that she knew one of the robbers, who she thought was named Richard Lift, a person with whom she attended elementary school when she was younger. That same night Gloria Sanders went to the police station where she was shown “a lot of pictures.” From these she picked the picture of appellant Richard Johnson, whom she declared to be one of the robbers. A “wanted” bulletin went out for him and the police apprehended him on February 19, after a struggle when he sought to flee from the police.
Thereafter Gloria Sanders attended a physical lineup and again positively identified Richard Johnson as one of the three robbers. She explained why she had been confused in thinking Richard Johnson was Richard Lift, by pointing out that they had both attended school with her at the same time. However, she stated her identification of Johnson was made from her recollection of his facial features, which were plainly visible at the time of the robbery.

Assignment 1

In support of his motion to suppress, appellant relies principally upon Glorida Sanders’ testimony that, soon after the robbery, she told police that she knew one of the robbers, who she thought was Richard Lift. It is the defense contention that when she later identified Richard Johnson as the robber, the identification was the result of undue influence on the part of the police. This defense theory, however, is based upon speculation and conjecture and is not supported by the record in any particular. To the contrary, by stipulation it was agreed that a police officer would testify that the lineup was conducted in a regular, orderly manner with no unusual occurrences in any way. There is no evidence to the contrary.
In addition, the record convinces the Court that the victim Gloria Sanders satisfactorily explained the confusion she first experienced about the robber’s name. She had attended elementary school with both Richard Lift and Richard Johnson many years before and she was uncertain whether the robber was named Lift or Johnson. However, her ready identification of Johnson from numerous photographs and at the physical lineup without any indication of suggestive procedure supports the trial judge’s denial of the motion to suppress identification.
“[Ejach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification.” Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Assignment 2

At the trial patrolman Marcel David testified that he assisted at the arrest of Johnson on February 19. He described the circumstances of that happening, testifying that Johnson sought to flee from the police officers. When they ran after and overtook him, Johnson struggled, fought and tried to get away. He was *253 subdued and transported to central lockup where he was charged with armed robbery and resisting arrest. This testimony was elicited in response to the State Attorney’s question, “Officer, what action did you take? What did you do?” No objection was made by the defense at that time.
Thereafter, defense counsel questioned patrolman David, asking if he filled out a Field Arrest Report when Johnson was brought to central lock-up. David said he did and defense counsel questioned him concerning information contained on the report, particularly the reference to the entry, “Physical attack. Other physical attack,” and “Weapon Specified' — None.” In explanation of these entries patrolman David said, “In other words, when we arrested Mr. Johnson, he was booked with armed robbery.” At this time defense counsel objected, “That is what he is on trial for.” When the objection was overruled, patrolman David continued in explanation :
“He was booked with armed robbery. He was booked with resisting arrest, and he was booked with simple battery on police officers. Now, when we fill out ‘Weapon Used’, it’s the weapon used in the actual arrest; and the weapon in this case was a physical attack on us when he resisted arrest. And that’s what ‘Physical Attack’ means. In our booking form, in other words, when we charge him with simple battery, the weapon was a physical attack on us while we were trying to arrest him.”
Subsequently, on cross-examination, defense counsel asked, “Now, Officer, the other two charges that you now have mentioned, resisting arrest and simple battery, those charges were in connection with the apprehension of Richard Johnson, were they not?” Patrolman David answered, “That’s correct.” Thereafter, the State offered the Field Arrest Report into evidence over defense objection.
Aside from the fact that no reason for the objection was given at the time, La.Code Crim.Pro. art. 841 and State v. McCray, 327 So.2d 408 (La.1976), there is no merit to the defense contention that the Field Arrest Report was irrelevant and improperly permitted evidence of arrest of other crimes into the record contrary to Section 495 of Title 15 of the Revised Statutes. As the quotations from the testimony demonstrate, the fact that defendant resisted arrest and committed battery upon the arresting officers was brought out by defense counsel in explanation of entries on the Field Arrest Report. Under these circumstances it was proper for the State to introduce the Field Arrest Report.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.