Ronald Clyde NELSON,
Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections,
Respondent-Appellant.

No. 79-3817.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 17, 1981.

Charles A. Sharman, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Erik S. Goodman, Staff Counsel for Inmates, Sugar Land, Tex., for petitioner-appellee.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

*Third Time's A Charm*

Appellant, Texas Department of Corrections, appeals from the District Court's granting of habeas corpus relief, 28 U.S.C.A. § 2254 to appellee, Ronald Clyde Nelson. Nelson was indicted on three counts for the sale of heroin and tried on a plea of not guilty in March of 1973. The state prosecution presented only two witnesses at trial—an undercover agent and a state chemist. In the course of the chemist's testimony three narcotics lab submission reports—State's exhibits nos. 13, 14, 15—were offered into evidence and admitted, over the objection of Nelson's counsel. These reports were identical except that each cor-

responded to only one of the respective heroin counts.[1]

Nelson's counsel objected to the admission of exhibit number 13 on the basis that a proper predicate had not been established, number 14 claiming that there had been no showing of a chain of custody, and number 15 as hearsay. All objections were overruled. The jury convicted Nelson of all three charges and the trial judge sentenced him to serve concurrent 50 year terms on each count.

Represented by new counsel, Nelson directly appealed his conviction based on the admission of State's exhibits 13, 14 and 15. The Texas Court of Criminal Appeals, *Nelson v. State*, 507 S.W.2d 565 (Tex.Cr.App. 1973), affirmed the two convictions predicated on exhibits 13 and 14, finding that counsel failed to preserve error by interposing a hearsay objection to the admissibility of these two exhibits. As to exhibit 15, the Court found that counsel had made a proper hearsay objection and reversed this conviction, citing two recent state decisions handed down after Nelson's conviction, *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App. 1973) and *Rodriquez v. State*, 494 S.W.2d 864 (Tex.Cr.App. 1973).[2] After completing all avenues of available state remedies, Nelson sought federal habeas in March 1977, arguing that (i) trial counsel was ineffective due

to his failure to properly object to the admission of State's exhibits 13 and 14, and (ii) that the admission of those exhibits denied Nelson his constitutional right to confront adverse witnesses. The Federal Magistrate denied relief concluding that Nelson had been afforded reasonably effective representation of counsel and had not demonstrated any actual prejudice suffered by the erroneous admission of exhibits 13, 14.[3]

However, the District Court declined to follow that recommendation and held that "the failure of Nelson's trial counsel to preserve reversible error by objecting to the hearsay nature of the submission reports admitted into evidence ... actually prejudiced Nelson's defense and caused trial counsel's assistance to fall below the Sixth Amendment standard." This appeal followed and we are now required to determine whether appointed counsel's assistance was less than reasonably effective because he failed to preserve reversible error by objecting to the hearsay nature of two submission reports admitted into evidence. We are *not* required or even allowed to consider the evidentiary wisdom of the State of Texas in this issue. Unquestionably, federal habeas corpus is available only for the vindication of rights existing under federal law; not rights existing solely under the

---

1. The reports contained the offender's name, the chargeable offense, and the agent's conclusions that the substance analyzed was heroin.

NARCOTICS SUBMISSION AND REPORT

| Dallas, Texas | 4-25, 1972 | // | Submitting Agency | |
|---|---|---|---|---|
| | | | File Number | 1A-72-0065 |

SUSPECT (Full name, sex, and color)  NELSON, Ronald aka "Clyde", Colored Male.

OFFENSE  Possession and Sale of a Narcotic Drug     Date  4-20 1972
COUNTY OF OFFENSE  Dallas-057

| EXHIBIT NO. | QUANTITY | EVIDENCE SUBMITTED (DESCRIBE FULLY: CIGARETTES, CAPSULES, TABLETS, MARKS, ETC.) | STATE SPECIFIC DRUG SUSPECTED |
|---|---|---|---|
| | | One piece of tinfoil containing a white powder | |
| | | substance, alleged Heroin. | If Heroin |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Submitted by  Robert J. Harden  #272        Title  Narcotic Agent 1
Address  P.O. Box 28008, Dallas, Texas  75228

2. In both *Coulter v. State*, 494 S.W.2d 876 (Tex. Cr.App. 1973), and *Rodriquez v. State*, 494 S.W.2d 864 (Tex.Cr.App. 1973), the Court of Appeals held that evidence submission forms, filled out by agents containing the agent's conclusion as to the analysis and identification of the substances were inadmissible hearsay constituting reversible error.

3. We observe that this Court has not clearly held that a habeas petitioner must demonstrate any degree of prejudice suffered by his counsel's ineffectiveness in similar situations, although there is dicta in *Davis v. State of Alabama*, 596 F.2d 1214, 1221–23 (5th Cir. 1979) indicating that no showing of prejudice may be required under this set of facts. Nevertheless, we find it unnecessary to decide that issue here since we assume, without deciding, that prejudice exists in the sense that under Texas law a complete reversal of all three counts would have resulted had the proper objections been tendered.

**906**

rules of state procedure. *Butts v. Wainwright*, 575 F.2d 576 (5th Cir. 1978); *Loud v. Estelle*, 556 F.2d 1326 (5th Cir. 1977); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970); *Bilton v. Beto*, 403 F.2d 664 (5th Cir. 1968); *Beto v. Sykes*, 360 F.2d 411 (5th Cir. 1966). Therefore, our duty is to determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole "fundamentally unfair." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436 (1974); *Cobb v. Wainwright*, 609 F.2d 754 (5th Cir. 1980); *Nero v. Blackburn*, 597 F.2d 991 (5th Cir. 1979); *Gillihan v. Rodriguez*, 551 F.2d 1182, *cert. denied*, 433 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111 (1977).

*Sixth's Guarantees*

■ The Sixth Amendment rights to counsel entitles the accused in a criminal proceeding to representation by an attorney reasonably likely to render and rendering reasonably effective assistance. *See, e. g., Hill v. Wainwright*, 617 F.2d 375 (5th Cir. 1980); *Rummel v. Estelle*, 590 F.2d 103 (5th Cir. 1979); *Carbo v. United States*, 581 F.2d 91 (5th Cir. 1978); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974). Moreover, we have said that effective assistance is neither tantamount to errorless assistance, nor counsel judged ineffective by hindsight. *Clark v. Blackburn*, 619 F.2d 431 (5th Cir. 1980); *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980); *MacKenna v. Ellis*, 5 Cir., 280 F.2d 592, *modified*, 5 Cir., 289 F.2d 928, *cert. denied*, 368 U.S. 377, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Rather, the methodology for applying the standard involves an inquiry into the actual performance of counsel conducting the defense and a determination of whether reasonably effective assistance was rendered based upon the *totality* of circumstances and the entire record. *See, e. g., Lovett v. State of Florida*, 627 F.2d 706 (5th Cir. 1980); *United States v. Gray*, 565 F.2d 881 (5th Cir. 1978); *Lee v. Hopper*, 499 F.2d 456 (5th Cir. 1974). It is within this framework of totality of circumstances that we judge the "fundamental fairness" of the trial and ultimately counsel's ineffectiveness.

■ In the present case, the record of state proceedings readily discloses that overall, Nelson's counsel rendered effective assistance by (i) filing meaningful pre-trial motions, (ii) cross-examining each of the state's witnesses rigorously and in a manner favorable to Nelson's apparent trial strategy, and (iii) making specific meaningful objections to testimony and exhibits. In closing argument, counsel artfully interwove defensive theories with specific references to areas of testimony and evidence in support of defendant's trial strategy. Thus, in its totality, counsel's assistance was more than reasonably effective. Yet, we are asked to consider counsel's single error which resulted in a violation of state law and a partial reversal of conviction, to be so prejudicial as to render the trial as a whole "fundamentally unfair". We cannot so hold.

Nelson relies heavily on the language found in *Nero* in support of his position. In that case, Nero's counsel failed to request a mistrial following improper prosecutorial comments of prior convictions. Counsel's ignorance of Louisiana statutory law caused a conviction when an automatic mistrial would have been granted if defense counsel had merely asked for one. This Court held that "[s]ometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the Sixth Amendment standard." *Nero*, 597 F.2d at 994. Nevertheless, in cases where this Court has held counsel ineffective due to a single error, the basis of the error in and of itself was one of constitutional dimensions which the Court could have relied on alternatively as a basis for its holdings. For example, in *Nero* the admission of three extraneous offenses by the prosecution in closing, would clearly have been prejudicial enough to violate "fundamental fairness". *See, e. g., Cobb v. Wainwright*, 609 F.2d 754 (5th Cir. 1980). In *Cooks v. United States*, 461 F.2d 530 (5th Cir. 1972), counsel's misinforming his client concerning the maximum possible sentence the defendant could face, caused the defendant's guilty plea to be overturned based on ineffective assistance of counsel. The Court stated:

Where counsel has induced defendant to plead guilty on the patently erroneous advice that if he does not do so, he may be subject to a sentence six times more severe than that which the law would really allow, the proceeding surely fits the mold we describe as a 'farce and a mockery of justice'.[4]

*Cooks,* 461 F.2d at 531. Once again, the single error in that case can be characterized as a constitutional violation of defendant's due process right to enter a plea knowingly and voluntarily. Similarly, in *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974), counsel allowed his client knowingly and involuntarily to plead guilty to an armed robbery charge where the requisite element of intent permanently to deprive would have been impossible to prove by the State.[5] Thus, it is a fair inference from these examples, that this Court has never held counsel to be ineffective simply because of a single error that in and of itself did not impugn the defendant's constitutional rights which would render the trial "fundamentally unfair."

### Two Types Of "Prejudice"

■ Neither do we accept Nelson's collateral argument that counsel's error was so prejudicial that it affected the jury's verdict and resulted in a violation of due process rights. Nelson relies on the authority of *United States v. Ware,* 247 F.2d 698 (7th Cir. 1957) and *United States v. Brown,* 451 F.2d 1231 (5th Cir. 1971) as illustrative of this contention. In *Ware* the Court reversed convictions where envelopes containing information similar to that in the instant case were received in evidence over objections and were ultimately sent to the jury room. The Court held that the writ-

ings were not admissible under the Business Records Act, 28 U.S.C.A. § 1732 or the Government Records Act, 28 U.S.C.A. § 1733, and their transmission to the jury room was prejudicial since "[t]he jury thus had before it a neat condensation of the Government's whole case against a defendant." *Ware,* 247 F.2d at 700. Similarly, in *Brown,* the Court concluded that they could *not* say that envelopes containing narcotics and chemist's reports which were tendered into evidence without objection, did not influence the jury. *Brown,* 451 F.2d at 1234.

Although both of these cases appear to be directly on point with the case at hand, a vital distinction exists in the type of "prejudice" spoken of there in comparison with this case. This Court has distinguished between two types of "prejudice"; that which might (i) affect the jury verdict, and (ii) which renders the trial as a whole "fundamentally unfair." *See, e. g., Spiegel v. Sandstrom,* 637 F.2d 405 at 407 (5th Cir. 1981). The erroneous admission of evidence which might affect a jury's verdict is prejudicial enough to constitute reversible error, however, within the constitutional framework which restricts this Court's review, such an error must be of the magnitude which will render the trial as a whole "fundamentally unfair." The admission of the exhibits in the present case were "prejudicial" to the extent that under Texas law had counsel made the proper hearsay objections, all three of Nelson's convictions would have been reversed. But, the error was not so "prejudicial" as to render the trial as a whole "fundamentally unfair". As a guideline to applying this criterion of "fundamental unfairness", this Circuit has repeatedly stated that the erroneous admission of prejudicial evidence can justify ha-

---

4. We no longer use the farce and mockery of justice standard. *See Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir. 1974). Claims of ineffective assistance of counsel require "an inquiry into the actual performance of counsel ... and a determination whether reasonably effective assistance of counsel was rendered based on the totality of the circumstances." *Carbo v. United States,* 581 F.2d 91, 95 (5th Cir. 1978). *Accord Lovett v. State of Florida,* 627 F.2d at 707.

5. This is the famous "keys left in jail door case". The fact that the keys were left in the jail house door is conclusive evidence that the keys were taken for temporary use only thus negating an intent to permanently deprive. Hence, a robbery conviction for taking the keys could not be proved.

beas corpus relief only if the error was "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.), *cert. denied sub nom.; Hills v. Maggio*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976). The record reflects an overwhelming amount of evidence indicating Nelson's guilt. Moreover, these reports were merely a written synopsis of the agent's and chemist's testimony. No new prejudicial material was contained in the submission forms and defense counsel had extensively cross-examined both witnesses concerning the same information. Consequently, any claim that the admission of the reports denied Nelson his constitutional right to confront adverse witnesses lacks validity.

### Two Month's Clairvoyance?

█ Finally, we address the State's argument that counsel should not be judged ineffective or negligent by hindsight, in failing to foresee that the Texas Court of Criminal Appeals would hold in *Coulter* two months *after* Nelson's trial that these narcotic submission reports constituted inadmissible hearsay. The decisions in *Nero* and *Cooks* make it clear that a failure of counsel to be aware of *prior* controlling precedents in even a single prejudicial instance *might* render counsel's assistance ineffective under the Sixth Amendment. However, counsel is normally not expected to foresee future new developments in the law or for that matter to research parallel jurisdictions—federal rules of evidence in preparation for a state proceeding.

> Of course, counsel's inability to foresee *future* pronouncements which will dispossess the Court of power to impose a particular sentence which is presently sought viable does not render counsel's representation ineffective, nor does a plea later become invalid because it is predicated upon advice correct at the time but later proved to be erroneous by reason of a *subsequent* decision . . . Clairvoyance is not a required attribute of effective representation.

*Cooks*, 461 F.2d at 532 (emphasis in original).

Moreover, the *Coulter* decision can be distinguished. A thorough reading of *Coulter* reveals that the Court in reaching its holding relied on the language in both *Ware*, 247 F.2d at 699, and *Brown*, 451 F.2d at 1234, *Coulter*, 494 S.W.2d at 882–83. As we have previously discussed, these cases reached their results based on a standard of prejudice as it might affect the jury verdict rather than the type of prejudice called for in this review—fundamental unfairness of the trial as a whole.

### One Error—Not Ineffective Assistance

█ To reiterate, the Sixth Amendment does not guarantee errorless counsel, and in single error cases which hold ineffective assistance, the mistakes depicted are of constitutional proportions and at a level or degree of incompetence that disregards the client's interest as a whole. That is lacking here. Simply stated, counsel's performance did not reach that high degree of ineptitude forbidden by the Sixth Amendment which would render the trial as a whole "fundamentally unfair". The fact that counsel objected in a different manner to each of the three reports and prevailed upon appeal in regard to only one, does not *per se* render the assistance of counsel incompetent or ineffective because there was no constitutional violation involving fundamental unfairness. To hold counsel to an errorless standard—much less an errorless reversible standard—is both to require an unattainable, unrealistic standard of perfection and, more so, would permit the Federal Court to disregard its sole, but important, role of monitoring errors of constitutional magnitude. The more realistic approach is to continue to apply a case-by-case totality of circumstances standard with which to judge counsel's ineffectiveness or lack of it. Judged by that standard, we do not find that Nelson's counsel rendered ineffective assistance as a whole and accordingly, reverse the granting of the habeas corpus.

REVERSED.